IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD HOUSER, :
YVETTE BRAXTON, :
WILLIAM HOUSER, :
SANTELL MILLER, and :
    Plaintiffs : No. 1:15-cv-00327
:
v. : (Judge Kane)
:
VISIONQUEST NATIONAL LTD., :
    Defendant :

**MEMORANDUM**

Before the Court is Defendant Visionquest National Ltd.'s motion for reconsideration. (Doc No. 68.) For the reasons set forth below, the motion will be denied.

**I.  BACKGROUND**

On November 29, 2017, this Court issued a Memorandum and Order (Doc. Nos. 66, 67), denying the motions for summary judgment filed by Defendant Visionquest National Ltd. ("Visionquest"), as to the claims of Plaintiffs Donald Houser, Yvette Braxton, and William Houser.[1] At the same time, the Court referred this case to Magistrate Judge Carlson for mediation proceedings. (Doc. No. 67.) On December 13, 2017, Visionquest filed a motion for reconsideration of the Court's November 29, 2017 Memorandum and Order (Doc. No. 68), with a brief in support (Doc. No. 69). Plaintiff filed a brief in opposition to Visionquest's motion on December 28, 2017 (Doc. No. 72), and Visionquest filed its reply brief on January 11, 2018 (Doc. No. 73).

Meanwhile, Magistrate Judge Carlson conducted mediation proceedings and reported to this Court that Visionquest had reached a settlement as to Plaintiffs William Houser and Yvette

---

[1] Although he remains on the docket in this matter, based on the conduct of the parties, it appears to the Court that the parties have reached a settlement as to Plaintiff Santell Miller's claims.

1

Braxton's claims.  Accordingly, the Court issued a sixty-day Order dismissing the claims of those plaintiffs on March 12, 2018.  (Doc. No. 74).  Visionquest's motion for reconsideration, now addressing only the claims of the sole remaining Plaintiff in this action, Donald Houser, remains pending and is ripe for disposition.

## II.     LEGAL STANDARD

A motion for reconsideration is a device used "to correct manifest errors of law or fact or to present newly discovered evidence."  Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).  Such motions "must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice."  Holsworth v. Berg, 322 F. App'x 143, 146 (3d Cir. 2009) (quoting N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).  A motion for reconsideration is not an appropriate mechanism to "attempt to convince the court to rethink a decision it has already made."  Williams v. Standard Fire Ins. Co., 892 F. Supp. 2d 615, 624 (M. D. Pa. 2012) (citation omitted).  Nor may it be used to "raise new arguments or present evidence that could have been raised" prior to the Court's decision. Coulter v. Unknown Prob. Officer, No. 12-cv-2067, 2013 WL 3863938, at *2 (M.D. Pa. July 24, 2013) (citation omitted), aff'd, 562 F. App'x 87 (3d Cir. 2014).  Motions for reconsideration are to be granted sparingly.  Id.

## III.    DISCUSSION

In its motion for reconsideration, Visionquest relies on neither an intervening change in controlling law nor the availability of new evidence not available previously as the basis for its motion; rather, it relies exclusively on what it maintains are clear errors of law and fact  in the Court's Memorandum and Order denying its motion for summary judgment as to Donald

2

Houser's race discrimination and retaliation claims. (Doc. No. 69 at 9-24.) Specifically, Visionquest argues that in denying its motion for summary judgment, this Court committed a clear error of law or fact by: (1) concluding that evidence of Donald Houser's dishonesty on his employment application was most appropriately considered in connection with the Court's analysis of the pretext stage of the McDonnell Douglas three-step burden shifting framework, as opposed to the qualification prong of Plaintiff's prima facie case (Doc. No. 69 at 9-16); (2) finding that, based on the record before it, Donald Houser had pointed to evidence sufficient to support a reasonable factfinder's inference that unlawful discrimination motivated Visionquest's decision to terminate him, and that Visionquest's articulated reason for terminating him was pretextual (id. at 16-19); and (3) finding that, construing all facts in the light most favorable to Plaintiff, Donald Houser had pointed to evidence sufficient to support a reasonable factfinder's inference that Visionquest terminated his employment in retaliation for engaging in potentially protected activities (id. at 19-24). The Court addresses each argument in turn.[2]

A. Plaintiff's Prima Facie Case

Visionquest argues that the Court misapplied Third Circuit precedent when it held that:

> [C]onsideration of DHouser[3]'s dishonesty on his employment application during Plaintiff's prima facie case would deny him the opportunity to show that Defendant's proferred nondiscriminatory reason is pretext. Therefore, this Court declines to find DHouser unqualified due to his dishonesty on his employment application. Evidence of DHouser's dishonesty is properly analyzed during the second and third parts of the McDonnell Douglas test.

(Doc. No. 66 at 13.)

---

[2] In light of the parties' intimate familiarity with the facts of this case, as well as the Court's detailed discussion of the factual background of this case and the legal standards applicable to it in its November 29, 2017 Memorandum and Order, the Court limits its discussion to the points raised by Visionquest in its motion.

[3] "DHouser" is "Donald "Houser." In the Court's November 29, 2017 Memorandum and Order, the Court referred to the two Houser plaintiffs as "DHouser" and "WHouser."

Specifically, in its motion, Visionquest maintains that under Third Circuit precedent, it is "appropriate to consider a plaintiff's qualifications for a position during the prima facie stage when such qualifications involve objective criteria." (Doc. No. 69 at 9-10.) As to the qualification prong of the prima facie case, in its motion for summary judgment, Visionquest relied exclusively on Nelson v. DeVry, Inc., No. 07-4436, 2009 WL 1213640 (E.D. Pa. Apr. 23, 2009), in arguing that Donald Houser could not establish that he was qualified for the position from which he was terminated. Visionquest relied on Nelson in arguing that "[w]hen an employee violates a company policy . . . it is clear that such an employee is not meeting the employer's legitimate expectations, and, thus, is not qualified for the position." (Doc. No. 40 at 20.)

In rendering its decision now challenged by Visionquest, the Court found Visionquest's reference to whether Donald Houser was "meeting the employer's legitimate expectations" to be most properly analyzed in connection with pretext stage of the McDonnell Douglas analysis, in light of the evidence of record demonstrating Donald Houser's qualification for the relevant position, including his multiple promotions, significant salary increases, positive performance evaluations, and various awards earned during his employment with Visionquest. The Court found that consideration of evidence of Donald Houser's dishonesty on his employment application (the stated reason for his termination) in connection with his prima facie case "would deny him the opportunity to show that Defendant's proferred nondiscriminatory reason is pretext." (Doc. No. 66 at 13.) The Court did so in recognition of the fact that "there is no rigid formula of a prima facie case and the requirements may vary with 'differing factual situations.'" See Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 938 (3d Cir. 1997) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973)).

In challenging the Court's decision, Visionquest cites two district court cases from this Circuit, Sweeney v. Roche Diagnostics Corp., No. 4:11-cv-01691, 2013 WL 6731049 (M.D. Pa. Dec. 19, 2013), and Rossi v. All Holding Co., No. 3:11-cv-1641, 2014 WL 346934 (M.D. Pa. Jan. 30, 2014), as support for its argument that in the Third Circuit, qualifications involving "objective criteria" should be considered in evaluating a plaintiff's prima facie case. The Court recognizes that, despite the fact that the "flexible test" of the McDonnell Douglas prima facie case has "spawned discordant progeny on this issue of an employee's qualifications both within the United States Court of Appeals for the Third Circuit and among the various Courts of Appeals," the cases cited by Visionquest reflect that qualifications involving "objective criteria" should generally be considered in evaluating a plaintiff's prima facie case. Sweeney, 2013 WL 6731049, at *6.

However, that recognition does not take the Court where Visionquest asks it to go here. As an initial matter, as noted above, in its brief in support of its motion for summary judgment, Visionquest argued that an employee's violation of company policy makes it "clear that such an employee is not meeting the employer's legitimate expectations, and thus, is not qualified for the position," (Doc. No. 40 at 20), suggesting to the Court that it evaluate Donald Houser's qualifications in connection with the pretext stage of the analysis. See Sweeney, 2013 WL 6731049 at *6 ("[W]hether a plaintiff subjectively fulfilled an employer's expectations is more appropriately considered during the pretext stage of the analysis"). In addition, neither Sweeney nor Rossi involved a factual situation similar to that of the instant case.[4] Further, the court in

---

[4] The other case cited by Visionquest in support of its position, which does pertain to the issue of dishonesty on an employment application as an objective qualification to be considered in connection with the prima facie case, is a district court case from the Sixth Circuit, EEOC v. Cintas Corp., No. 04-40132, 2010 WL 3582656 (E.D. Mich. Sept. 16, 2010), and is not controlling precedent for purposes of the instant case.

5

Rossi acknowledged that "where a defendant's argument regarding the qualification of a plaintiff is tied to its claim of a legitimate justification for the adverse employment action, 'courts should be careful not to collapse the entire McDonnell Douglas analysis in the first step.'" Rossi, 2014 WL 346934, at *10 (quoting Cellucci v. RBS Citizens, N.A., 987 F. Supp. 2d 578, 590 (E.D. Pa. 2013)).

Accordingly, upon careful review of the precedent cited by Visionquest, and in recognition of the "flexible" nature of the prima facie test, and mindful of the specific factual circumstances of this case – namely, the fact that Visionquest's reason for terminating Donald Houser is identical to the reason it maintains he is unqualified for the position – and Rossi's cautionary instruction that a district court must be careful not to collapse the entire McDonnell Douglas analysis into the prima facie case, the Court finds that Visionquest has failed to meet its heavy burden to establish that the Court's decision amounted to a "clear error of law" justifying reconsideration of its decision on this point.

> B. Record Evidence Supporting the Inference that Unlawful Discrimination Motivated Visionquest's Decision to Terminate

Next, Visionquest argues that this Court relied on two facts not supported by record evidence when it concluded that Donald Houser had pointed to evidence supporting a reasonable "inference of discrimination," as well as pretext. Specifically, Visionquest argues that the Court's finding that record evidence supported the following factual inferences was in error: (1) decision-maker Jim Yester may have had knowledge of Donald Houser's criminal history prior to his receipt of the April 2013 email; and (2) Visionquest did not terminate white employees for racist behavior that took place on Visionquest's property. (Doc. No. 66 at 16-19.)

With regard to this issue, the Court concluded in its November 29, 2017 Memorandum and Order that:

6

> [T]here exist disputed material facts, construed in the light most favorable to DHouser, from which a reasonable factfinder could infer that unlawful discrimination motivated Defendant's decision to terminate DHouser's employment. The record shows that Defendant may have known about DHouser's criminal history for almost two years before it fired him for lying about that history. (Doc. Nos. 47-1 at 22-28, 47-13 at 16.) DHouser claims that Yester, who made the decision to terminate his employment, and other administrators and management-level employees knew about his criminal history and supported his employment by Defendant prior to the receipt of the April 2013 email. (Doc. Nos. 47-1 at 26-29, 47-13 at 16.) Moreover, Defendant did not terminate white employees for racist behavior engaged in on Defendant's property, but terminated DHouser for lying on his application almost two years after he submitted the application, after many upper-level employees allegedly knew about his criminal background, and after he received numerous promotions, raises, and awards. (Doc. No. 47-1 at 76-77.) These disputed facts permit a sufficient inference of race discrimination to establish a prima facie case, requiring Defendant to articulate a "legitimate, nondiscriminatory reason" justifying its decision to terminate DHouser's employment.

(Id. at 14.) The Court found that these same facts, coupled with evidence of racial incidents occurring among Visionquest employees during Donald Houser's employment, to which he attempted to call attention and remedy, constituted sufficient evidence from which a reasonable factfinder could conclude that Visionquest's stated nondiscriminatory reason for terminating Donald Houser's employment was pretextual. (Id. at 15-16.)

With regard to the first factual issue raised by Visionquest, Visionquest points to Donald Houser's testimony that he did not personally inform Yester of his criminal background in arguing that the Court committed a manifest error of fact in this regard. (Doc. No. 69 at 16.) However, the Court's review of the record evidence in this case reflects that, as the Court stated in its earlier Memorandum and Order, there exists some evidence of record from which a reasonable factfinder could conclude that Yester, the decision-maker in Donald Houser's termination, did in fact know of his criminal background at the time of his hiring. Specifically, that evidence consists of:

7

- an August 9, 2011 Memorandum from Barry Williams to Visionquest's Human Resources department, copied to Kris Smihal, Chief Administrator of South Mountain ("Smihal"), which stated that Williams reviewed Donald Houser's background check and written statement with Visionquest's corporate office prior to Visionquest's decision to hire him (Doc. No. 59-3 at 30);

- Williams' testimony that the Visionquest corporate office person with whom he reviewed the background check and statement was Yester (Doc. No. 59 at 120, Williams Dep. at 72:10-21);

- an audit of Donald Houser's personnel file demonstrating that his Pennsylvania State Police and FBI clearances were in his file at the time of his hire (Doc. No. 59-3 at 32), as well as the testimony of Deborah Shauf (who maintained Visionquest's HR files), who stated that Donald Houser's FBI "rap sheet" was in his file at the time of his hire (Doc. No. 59-3 at 38, Shauf Dep. at 17:8-12 and 26:25-27:7);

- Teresa Straley's testimony that Yester and Smihal were responsible to review applicants' "rap sheets" before hiring, and that an applicant could not be hired until such a review was completed (Doc. No. 59-1 at 6, Straley Dep. at 83:6-21).

The above record evidence constitutes some evidence from which a reasonable factfinder could conclude that Yester (the decision-maker regarding Donald Houser's termination) knew of Donald Houser's criminal background at the time he was hired. While Visionquest clearly disagrees with the Court's view of the inferences supported by the evidence of record, such disagreement does not constitute "clear error" warranting reconsideration of the Court's decision. Visionquest's argument on this point amounts to an effort to convince the Court to "rethink a decision it has already made," and therefore, fails to meet its heavy burden to justify reconsideration of the Court's decision. See Williams, 892 F. Supp.2d at 624.

Further, as to the Court's statement regarding evidence of Visionquest's failure to terminate white employees for engaging in racist behavior, Visionquest argues that the record shows that the referenced incident of racist behavior involved a black employee as well as white employees, and that all the employees involved in the incident were disciplined in the same

8

manner, and therefore, such evidence does not support a reasonable inference of discrimination. (Doc. No. 69 at 18-19.) With regard to the incident referenced by Visionquest, according to the record, three of the four employees involved in the incident were disciplined (two white employees and one black employee) by being suspended and required to move out of the farmhouse on Visionquest's property.[5] (Doc. No. 59-2 at 60-65.) The record indicates that one of those three disciplined employees, who is white, engaged in an additional incident of racist behavior shortly after the previous discipline was imposed, but was not terminated from his employment with Visionquest. (Id. at 31, Smihal Dep. 98:3-17.)

The Court referred to the aforementioned evidence when it stated in its Memorandum and Order that "Defendant did not terminate white employees for racist behavior engaged in on Defendant's property, but terminated [Donald Houser] for lying on his application almost two years after he submitted the application, after many upper-level employees allegedly knew about his criminal background, and after he received numerous promotions, raises, and awards." (Doc. No. 66 at 14.) As with the first factual issue discussed above, while Visionquest may disagree with the Court's view of the inferences supported by the evidence of record, such disagreement does not constitute "clear error" justifying reconsideration of the Court's earlier decision; rather, such disagreement amounts to an effort to convince the Court to "rethink a decision it has already made," and fails to satisfy Visionquest's heavy burden to justify reconsideration of the Court's decision. See Williams, 892 F. Supp.2d at 624.

---

[5] Apparently the fourth employee involved was not disciplined because he left the employment of Visionquest shortly after the incident. (Doc. No. 47-1 at 51, D. Houser Dep. 197:18-21.)

C. Record Evidence Supporting a Prima Facie Case of Retaliation

Finally, Visionquest challenges the Court's denial of Visionquest's request for summary judgment on Donald Houser's retaliation claim. On this point, the Court previously found that

> although Plaintiffs have not provided much detail about the timing of these potentially protected activities relative to their respective terminations, based on the Court's review of the record, all of the incidents appear to have occurred within a relatively short time frame, after which Plaintiffs were terminated.

(Doc. No. 66 at 21.) This finding – coupled with the Court's conclusion regarding the existence of disputed material facts, construed in the light most favorable to Donald Houser, from which a reasonable factfinder could infer that Visionquest's stated nondiscriminatory reason for terminating Donald Houser was pretextual – supported the Court's decision to deny Visionquest's motion for summary judgment on Donald Houser's retaliation claim. (Id.) Visionquest now argues that Donald Houser failed to provide sufficient detail regarding the timing of his potentially protected activities in relation to his termination, and therefore, the Court committed a clear error of law by failing to grant Visionquest's motion for summary judgment on Donald Houser's retaliation claim. (Doc. No. 69 at 20-24.)

Again, the Court finds that Visionquest's argument fails to meet its heavy burden to justify reconsideration of the Court's decision, as Visionquest merely attempts to convince the Court to rethink a decision it has already made. Moreover, in its supporting brief, Visionquest spends several pages arguing that Houser failed to specify the timing of the alleged protected activities relative to his termination sufficient to establish a prima facie case of retaliation, while in its brief supporting its motion for summary judgment, Visionquest offered only one sentence in support of its argument that the timing of the potentially protected activities relative to Houser's termination did not support a causal relationship between the two. As to this issue, Visionquest stated only that Houser's retaliation claim failed "as he cannot establish that he

engaged in a protected activity (SMF ¶123), and/or that such a purported activity was causally related to his termination." (Doc. No. 40 at 27.) Accordingly, the three pages of argument presented to the Court in connection with Visionquest's motion for reconsideration amount to an effort to "raise new arguments or present evidence that could have been raised" prior to the Court's decision. See Coulter, 2013 WL 3863938, at *2. As stated above, a motion for reconsideration is not an appropriate vehicle to "attempt to convince the [C]ourt to rethink a decision is has already made," Williams, 892 F. Supp.2d at 624, or to "raise new arguments or present evidence that could have been raised" prior to the Court's decision. Coulter, 2013 WL 3863938, at *2. Visionquest therefore fails to meet its heavy burden of justifying reconsideration of the Court's decision at to this claim.

## IV. CONCLUSION

For the foregoing reasons, Visionquest's motion for reconsideration will be denied. An appropriate Order follows.

.